# Exhibit 1



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>NANCY WATKINS MCLAUGHLIN | Case Number: 18SL-CC04816 |
|---|---|
| Plaintiff/Petitioner:<br>MELISSA BOCK<br><br>                                             vs. | Plaintiff's/Petitioner's Attorney/Address<br>BENJAMIN FREDERICK WESTHOFF<br>2711 CLIFTON AVE<br>SAINT LOUIS, MO  63139 |
| Defendant/Respondent:<br>SAKS FIFTH AVENUE LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | |

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to:** SAKS FIFTH AVENUE LLC
**Alias:**
SERVE CSC-LAWYERS INCORPORATING
SERVICE COMPANY
221 BOLIVAR STREET
JEFFERSON CITY MO 65101

**COURT SEAL OF**



**ST. LOUIS COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

<u>26-DEC-2018</u>
Date                                                                                                          Clerk

**Further Information:**
TLC

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____.
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                   Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on _____ (date).

(Seal)
My commission expires: _____          _____
                                    Date                         Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $   10.00 |
| Mileage | $_____ (____ miles @ $.____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

## Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

(2) **Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only*: **Document ID# 18-SMCC-10701**     2     (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 18-SMCC-10701**     3     (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

# IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
# STATE OF MISSOURI

| | |
|---|---|
| MELISSA BOCK, | ) |
|     Plaintiff, | ) |
| v. | ) Cause No. _____ |
| SAKS FIFTH AVENUE LLC | ) Division No. _____ |
| Serve: | ) |
| CSC-Lawyers Incorporating Service Company | ) **JURY TRIAL REQUESTED** |
| 221 Bolivar Street | ) |
| Jefferson City, MO 65101 | ) |
|     Defendant. | ) |

## PETITION

COMES NOW Plaintiff Melissa Bock, by and through counsel, and for her cause of action against Defendant Saks Fifth Avenue LLC ("Saks") states as follows:

## COUNT I – AGE DISCRIMINATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

1. Plaintiff is a female residing in the County of St. Louis, Missouri. She was born in 1956, and was 61 years old at the time of the events that give rise to this action.

2. Defendant Saks is a corporation registered to conduct business in Missouri and at all times relevant herein conducted business in the County of St. Louis, Missouri.

3. Saks is an employer as defined by Mo. Rev. Stat. § 213.010(8) in that Saks, at all relevant times herein, employed six (6) or more employees in the State of Missouri.

4. This claim arose in the County of St. Louis, Missouri, where Saks conducted business at all times relevant herein and employed individuals at all times relevant herein, including Plaintiff, to transact business on its behalf.

1

5.      Saks has employed more than five hundred (500) employees in each of twenty (20) or more calendar weeks in 2018.

6.      Plaintiff began working for Saks as a Sales Manager in the Jewelry Department at its store in Frontenac Plaza in St. Louis County on or about October 1, 2010.

7.      Plaintiff's chief responsibilities as Sales Manager in the Jewelry Department were to increase sales and manage a team of Sales Associates to improve sales.

8.      During Plaintiff's tenure at Saks, she significantly improved jewelry sales, taking the Jewelry Department's corporate ranking from number 41 out of 46 Saks stores to number 13 out of 42 stores.

9.      Plaintiff developed several $1 Million jewelry Sales Associates in her Department under her supervision and mentorship.

10.     Plaintiff's last selling season at Saks was a successful one. Her Department surpassed the sales goal of $1,823,836 established by Saks for the season. The Jewelry Department's sales for the season were 123% to said goal at or about the time of Plaintiff's discharge from Saks.

11.     Saks recognized Plaintiff's significant contributions and outstanding performance in both year-end performance appraisals and through awards and commendations. Plaintiff earned a Best Overall Achievement award in 2012 at Saks' Jewelry Summit.

12.     Saks also recognized Plaintiff's outstanding customer service skills by giving Plaintiff the Service Star award.

13.     Management at Saks praised Plaintiff's strong relationships with customers and exceptional ability to lead a team. For instance, in September 2016, following an important sales event Plaintiff was selected to lead, Larry Bruce, Executive Vice-President of Stores, wrote an

2

email to Plaintiff saying "how proud I am of you and your team for executing last night's event . . . part of your success is your relationships with clients, something I do not always find in our managers . . . thank you for your hard work, focus and drive."

14. Before August 1, 2017, Plaintiff consistently received positive overall performance appraisals from her General Manager, as well as significant bonuses in recognition of her strong sales.

15. On or about August 1, 2017, Ryan Jay (age mid-30's), became the General Manager of the Saks store where Plaintiff worked.

16. Mr. Jay displayed a preference for younger workers. Upon information and belief, most of the employees that he participated in hiring or promoting were under the age of 40. For instance, Mr. Jay promoted Kirsten Brown (age 30's) from Marketing Office Manager to Sales Manager, and gave her a substantial raise with the promotion. He promoted Ms. Brown even though she had little to no sales experience, or experience leading a sales team, and was the subject of complaints by co-workers to Human Resources.

17. In addition, Mr. Jay hired Faye Schlechta (age approximately 30) to serve as Office Manager. She remained employed at Saks for about 90 days before resigning.

18. Mr. Jay transferred a Sales Associate named Shuwen Zou (age approximately 20's) to the prestigious Fifth Avenue Club, which caters to Saks' biggest customers, to focus on improving sales there. The sales position in the Fifth Avenue Club is coveted by Saks staff because of the opportunity to earn substantial bonuses for selling high-ticket items.

19. Upon information and belief, Mr. Jay also hired Plaintiff's replacement, Katie Petrache (age 30's), following her discharge.

3

20. Upon information and belief, Mr. Jay also hired a young man in approximately his early 30's into the position of Shoe Sales Manager in late summer 2018. Mr. Jay passed over at least one older employee at Saks who had applied for the position and was approximately 60 years old.

21. Additional examples of Mr. Jay replacing older workers with younger ones abound. He fired the Cosmetics Manager, Robert Williamson (age 50's), in November 2017 and replaced him with Erin McNurlen (age early mid-30's). After Debra Derrick (age 60's) retired from the Assistant General Manager-Operations role in September 2017, Mr. Jay hired Kimberlee Hawley (age 30's) to fill the position. Mr. Jay also hired Megan Perry (age 20's) into a sales role at the Fifth Avenue Club in or about November 2017.

22. Mr. Jay also made age-related comments. He stated, for example, that he wanted "new, fresh blood" in the store, and commented that having a "Millennial mentality" was important for employees at Saks.

23. Moreover, Mr. Jay treated younger employees at Saks more favorably than older workers. He disciplined, counseled and wrote-up older workers more often than younger ones.

24. Mr. Jay also belittled Plaintiff in meetings and raised his voice at her. In or about November 2018, for instance, Mr. Jay yelled at Plaintiff during a meeting at which other managers of the store were present. When Plaintiff raised concerns in the meeting over moving certain expensive jewelry pieces from the main Jewelry Department area to the Fifth Avenue Club, where only Club members could view them, he belittled her by saying that Plaintiff had "ancient ideas."

25. Further, in a meeting with Plaintiff in mid-August 2017, which was supposed to pertain to Mr. Jay learning about Plaintiff's Department, he became impatient as she explained

4

how she managed her successful business and sales associates. He cut Plaintiff off, and told her "I do not want to hear about what you did 47 years ago."

26. Upon information and belief, over the past five years, Saks has engaged in a practice of terminating the employment of older Jewelry Managers throughout its organization. Examples include Pat Camacho (20 plus years of jewelry experience) in Palm Desert, California; Patti Parker (21 plus years of jewelry experience) in Birmingham, Alabama; Gerri Tormey (25 plus years of jewelry experience) in Palm Beach Gardens, Florida; Fletcher Shurley (35 plus years of jewelry experience) in Sarasota, Florida; David Klis (30 plus years of jewelry experience) in Troy, Michigan; Waka Blanchard (20 plus years of jewelry experience) in Cincinnati, Ohio; and John Hagman (35 plus years of jewelry experience) in San Francisco, California.

27. Upon information and belief, Saks has terminated older Jewelry Managers with extensive experience in the industry and proven track records of success at Saks, and replaced them with younger employees who are far less experienced.

28. On or about January 11, 2018, Saks fired Plaintiff.

29. Mr. Jay made the decision to fire Plaintiff.

30. The reasons Saks identified for terminating Plaintiff's employment are pretextual.

31. Plaintiff's age was a contributing and motivating factor in Saks' decision to fire her.

32. Saks terminated Plaintiff's employment in a discriminatory and unlawful manner in violation of Plaintiff's rights under Mo. Rev. Stat. § 213.055.

33. On or about February 22, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and Missouri Commission on Human Rights relating to her employment with Saks.

34. On October 1, 2018, Plaintiff received a Notice of Right to Sue letter from the Missouri Commission on Human Rights, and Plaintiff has filed this action within ninety (90) days of the date on the Notice of Right to Sue and within two (2) years from the date of the last discriminatory act of Saks.

35. As a result of Saks' age discrimination against Plaintiff, as alleged herein, Plaintiff has suffered lost wages and benefits of employment.

36. As a result of Saks' age discrimination against Plaintiff, as alleged herein, Plaintiff has suffered emotional distress and mental anguish.

37. As a result of Saks' age discrimination against Plaintiff, as alleged herein, Plaintiff has incurred attorneys' fees and costs of litigation.

38. The conduct of Defendant Saks was outrageous because of Saks' evil motive or reckless disregard for Plaintiff's rights under Missouri law to not be discriminated against with respect to the terms, conditions, and privileges of employment. Such conduct warrants an award of punitive damages to punish Saks and deter it from engaging in further age discrimination.

WHEREFORE, Plaintiff prays that this Court, after trial by jury, enter its Order and Judgment against Defendant and in favor of Plaintiff in an amount to be determined at trial for Plaintiff's lost wages and benefits of employment, and prejudgment interest thereupon, for front pay, and for compensatory damages, including damages for emotional distress, for punitive damages, for attorneys' fees and costs of litigation, and for such other relief as is just and proper.

**Plaintiff requests a trial by jury as to all counts.**

Respectfully Submitted,

SEDEY HARPER WESTHOFF, P.C.
Attorneys for Plaintiff

*/s/ Benjamin F. Westhoff*
Benjamin F. Westhoff, #53047
Donna L. Harper, #26406
2711 Clifton Avenue
St. Louis, MO 63139
314/773-3566
314/773-3615 (fax)
bwesthoff@sedeyharper.com
dharper@sedeyharper.com

7